## Louisville Railway Co. v. Himbaugh.
## Himbaugh v. Conard.

(Decided Feb. 15, 1935.)

LEE & KRIEGER for appellant.

STUART E. LAMPE and LUKINS & JONES for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing in part and affirming in part.

At about 9 p. m., on July 7, 1933, the plaintiff below, Alice Himbaugh (who is appellee in the first appeal in the caption and appellant in the second one) was a passenger on one of the street cars of the Louisville Railway Company traveling north on Eighteenth street in the city of Louisville, Ky. At some point within the junction of that street with Garland avenue, a large Federal truck of Samuel Conard was traveling south on Eighteenth street, and while passing the street car, on which plaintiff was seated on its north side opposite the second window from the front, a mirror supported by rods and brackets that projected from the body of the truck some 2½ or 3 inches came in contact with some iron lattice or steel framework on the street car window whereby it was torn loose and a part of it thrown into the open window of the car by which plaintiff was seated. A piece of it struck plaintiff in her left eye puncturing the ball, so that it had to be later removed. She was confined in the hospital about four weeks and suffered great pain, the sympathetic effects of which also impaired the vision of her right eye. Her physicians', medical, and hospital bills amounted in the aggregate to $913.10. She later filed this action in the Jefferson circuit court against the Louisville Railway Company and Conard, the owner of the truck, alleging in her petition, in substance, that her injuries were produced by the joint and concurrent negligence of both defendants, which each of them in their separate answers denied.

The jury that tried the case under the instructions given to it by the court returned this verdict, "We, the jury, find for the plaintiff $1500.00 for the loss of the eye, also for all other expenses in the sum of $913.10. above to be equally divided between the Louisville Railway Company and Conard," upon which the court adjudged, "That the plaintiff recover of each of the defendants, the sum of $1206.55 [one-half the verdict] with interest thereon at the rate of 6% per annum from February 13, 1934, until paid, and her costs herein expended, and for all of which she may have execution." Conard filed no motion for a new trial, nor has he prosecuted an appeal; but the defendant, Louisville Railway Company, has appealed from the judgment rendered against it, and plaintiff has appealed from the judgment

against Conard, both of which are prosecuted upon the same record filed in this court, and the two appeals will, therefore, be disposed of in one opinion, the first one to be determined being that prosecuted by the railway company. The only error its counsel urges for a reversal is the refusal of the court to sustain its motion for a peremptory instruction in its favor, made at the close of plaintiff's testimony and at the close of the entire testimony, but each time overruled with exceptions.

Plaintiff and two or three other members of her family who were on the car with her, together with another disinterested passenger, testified that the car upon which plaintiff was riding was traveling along in the usual way with no noticeable excess speed or other movements different from the ordinary ones incident to that method of travel. However, one witness, who was the husband of a granddaughter of plaintiff, and also a passenger in the street car, testified that according to his opinion it was traveling "at least thirty miles an hour," and that "it was swerving." He did not tell how far out the swerving to which he testified went, nor did he pretend to say what produced it, unless it was caused by the speed at which the car was traveling, according to his opinion. All the evidence without contradiction shows that the truck had passed the front end of the car some seven or more feet when the projecting mirror attached to its door on that side came in contact with the lattice or framework of the car window on that side and produced the injury to plaintiff in the manner indicated. The car stopped, as soon as the motorman discovered what had happened, within 40 or 45 feet of the place where it occurred, but the truck continued its course for some 5 or 6 blocks south, when Conard, who was making a freight delivery to some consignee in Decatur, Ala., and his companion, Shields, received word that some part of the truck had collided with a street car on the trip down that street, and on receiving that information they parked the truck on the right-hand side of the street and awaited the arrival of the policeman which Conard and his companion surmised would soon happen, and in which they were correct.

The arriving policeman discovered some glass from the projecting mirror on the running board of the truck on that side as well as a small quantity in the cab of the truck; but Conard and Shields testified positively that they knew nothing of the collision. When the police-

men first arrived where the truck was parked, Shields stated that he was driving the truck as it passed over Eighteenth street, but that was soon retracted by both him and Conard, and they each stated that the reason why that statement was made was, that Conard, who owned the truck, and who was the only carrier operating it, desired to continue the trip to his destination without detention because of the collision, and, since they concluded that if either of them should be detained it would be the driver, they at first gave the information that Shields was that one. But before getting off the stand they each retracted their first statements and made explanations as indicated.

The court in its instruction No. 1 submitting the liability, if any, of the railway company, said, "If you believe from the evidence that the street car was running at such an excessive rate of speed that it was caused to sway to an unusual degree and was thereby caused to collide with any part of the passing truck, and that Mrs. Himbaugh was thereby injured, then you should find for her as against the Louisville Railway Company. But unless you so believe from the evidence you should find for the Louisville Railway Company," to the giving of which objections and exceptions were taken by the defendant to which it applied.

It will be noted that no one carried home to the street railway company any knowledge of the projecting mirror on the truck, nor did the husband of plaintiff's granddaughter, Joseph Mettling, the only witness, as we have seen who testified to the speed and motions of the street car, testify to any fact upon which negligence of the street car company might be predicated. The undescribed "swerving" to which he testified was nothing more than what is universally known to be inevitable, to some extent at least, in the usual movement of street cars, and we know of no law that imposes the duty upon the operator of one to prevent such incidental swerving so as to avoid the possible collision with an object wholly external to the car and in no wise under the control of the one who operates it. A street car cannot depart from its fixed track, and if the way is clear for it to safely proceed, its operator is not charged with the duty of preventing others on the outside, over whom it has no control, from coming in contact with the side of the car, unless he was forewarned of such probability and refused to take steps to prevent it. No evidence of

any such forewarning was furnished in this case; but, on the contrary, it was indisputably shown that no collision with the street car window would have happened but for the projecting mirror on the truck, and which in turn was due to the operator of the truck attempting to pass the street car without leaving sufficient space for the body of the truck with its projecting mirror to pass in safety. It is our conclusion that it would be a radical departure from the law governing responsibility for negligence to hold the street car company, under the facts related, responsible for the results of the collision with the side of its car and the projecting mirror of the truck, under the indefinite and nonconvincing testimony of the only alleged supporting witness thereto in this case, to say nothing about the contradictions thereof by other members of his party who were his relatives and also relatives of plaintiff, plus that of other disinterested passengers and some bystanders on the street at the time. It therefore follows that the court erred in not sustaining the Louisville Railway Company's motion for a directed verdict in its favor, and the judgment against it, brought to our review by the first appeal in the caption, will have to be reversed.

Plaintiff's motion for a new trial which the court overruled contained no specific ground of smallness of damages, although it was therein claimed that the verdict was not sustained by the evidence. If, however, that ground as so framed should be considered as embracing what is claimed to be insufficient damages returned, then under the provisions of section 341 of our Civil Code of Practice we are forbidden to reverse the judgment therefor, since the verdict exceeds the proven actual damages incurred by plaintiff, and the case is not brought within any of the exceptions to the mandatory rule contained in that section. However, the point is not argued by counsel for plaintiff in either of his two briefs filed in this court. Complaint is made therein of only two alleged errors of the court, and which are: (1) A general but unargued criticism of the instructions given by the court to the jury, it being stated that the only instruction that should have been given was a peremptory one to find for plaintiff against both defendants; and (2) a contention of the rejection of alleged competent evidence offered by plaintiff at the trial.

As we have seen, ground (1) is unsustainable as against the Louisville Railway Company. Whether that

motion should have been sustained as against the defendant, Conard, need not be determined, since a verdict was returned against him, and which had the same effect as if it had been directed by the court. The instructions given to the jury authorized it to return a verdict against both defendants if it believed certain states of facts submitted to it and of which no complaint is made; or that the jury could find for one defendant and against the other, or in favor of both of them against the plaintiff, according to its determination of the issues embraced by the instructions. Counsel argue that the instructions as so framed tended to confuse the jury, but the contention carries with it no convincing force, since they are in strict conformity with those approved by this and other courts from time immemorial where two or more defendants are jointly sued for independent concurring negligent acts contributing to a single injury. They were so clearly framed as to avoid any confusing of a reasonably intelligent individual, to which class we must presume the jury in this case belonged. We, therefore, find no cause sustaining ground (1) urged in brief of plaintiff's counsel.

Ground (2) supra, likewise urged therein is, perhaps less meritorious than ground (1), which we have just disposed of. As we understand brief of counsel, it is directed chiefly to the action of the court in stopping further examination by plaintiff's counsel of the defendant, Conard, and his witness, Shields, with reference to and concerning their first statement to the policeman as to who was driving the truck at the time of the collision. The court's interference in that respect was upon the ground that the false statement that they first made to the policemen concerning the driver of the truck at the time of the accident had already been recanted by them, with their explanation, supra, and that counsels' persistence in having their story reiterated was an unnecessary consumption of the court's time, and which we think was and is correct. Moreover, plaintiff's counsel made no avowal as to what the answer to their propounded questions concerning such matters would have been; and, under an almost endless line of opinions from this court, the error complained of, if one, could not be considered by us without such an avowal. The cases cited by counsel in support of this ground are far removed from the situation we have here. The facts sought to be brought out in them had never been told by

any witness in the case, and the effort to uncover them in those cases was not (like it was here) only an effort to have them repeated, and which distinction separates the fact of those cases from those in this one, so as to make them absolutely inapplicable here. Besides, as we have seen, the only purpose of the complained of rejected questions was to produce a state of facts that would fasten neglect on Conard, the owner of the truck, and the jury returned a verdict against him, and by so doing convicted him of negligence. The information sought by the rejected questions (even if it had not been previously given by the witness as we have stated) could have no bearing upon the damages to be returned, if Conard was found by the jury to be guilty of neglect, and, since that fact was found against him, plaintiff could in no event be prejudiced by the ruling of the court complained of in ground (2).

The plaintiff herein was seriously hurt and greatly damaged without any fault on her part, and no one can read this record without feeling great sympathy for her. But litigations are not to be determined by sympathy of the court for the one side or the other. Before one may be visited by the heavy hand of the law and made to respond in damages, it must appear from some testimony having convincing force that he has violated some duty toward his antagonist for which the law holds him responsible, and in the absence thereof no amount of sympathy with his antagonist in the litigation will supply the deficiency. A careful study of this record convinces us of the correctness of our conclusions.

Wherefore, the judgment against the railway company is reversed, with directions to set it aside and to sustain its motion for a new trial, with directions that if the evidence on another trial against it, should there be one, is substantially the same as that on this one, to then sustain its motion for a peremptory instruction if made, and for other proceedings against it consistent herewith; but the judgment in favor of plaintiff against Conard, involved in the second appeal in the caption, is affirmed.